FRANK et al. v. WILSON & CO., Inc.
(two cases).

Nos. 9580, 9581.

United States Court of Appeals
Seventh Circuit.

Feb. 10, 1949.

Rehearing Denied March 9, 1949.

Richard C. Winkler and John L. Cockrill, both of Chicago, Ill., for Wilson & Co.

Alex Elson and Elson & Cotton, all of Chicago, Ill. (Willard J. Lassers, of Chicago, Ill., of counsel), for Frank.

Before MAJOR, Chief Judge, KERNER, Circuit Judge and DUFFY, District Judge.

DUFFY, District Judge.

Plaintiffs make claim for alleged unpaid overtime compensation under Sec. 16(b) of the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., covering the period from July 15, 1941, to July 19, 1945. Judgment was entered in favor of 149 plaintiffs in the sum of $14,211.62, plus interest and costs, and $1,500 attorney's fee. The amounts awarded ranged from $5.05 to Harry J. Schumacher to $168.53 for Alvin Arzig; thirty-three plaintiffs were awarded less than $50 each; sixty-nine less than $100 each. Defendant appeals from the judgment entered.

The trial court refused to award liquidated damages, concluding that the defendant's failure to compensate the plaintiffs in accordance with the Fair Labor Standards Act was in good faith and that the defendant had reasonable grounds for believing its acts were not a violation of the Fair Labor Standards Act. Plaintiffs cross-appeal from such determination.

During the period with which we are here concerned defendant was engaged in the meat packing business. Its plant in Chicago, Illinois, covered an area of four city

blocks. It purchased livestock in various parts of the United States for shipment to its Chicago plant. The meat products and by-products produced at Chicago were shipped by defendant throughout the United States. A total of four thousand persons were employed at the Chicago plant, which included 276 employed in the mechanical division, whose duties were to maintain and repair buildings, machinery, and equipment at the plant. The personnel in this division were blacksmiths, carpenters, tinsmiths, electricians, painters, millwrights, steam fitters, elevator repair men, and others in like vocations. The shops comprising the mechanical division were grouped together within a space of 900 feet. Each of the 149 plaintiffs herein was employed in the mechanical division. Most of them spent a large portion of their time working outside of their assigned shops.

Substantial evidence supports the trial court's findings that the scheduled working hours for employees of the mechanical division while working the day shift were from 8:00 A.M. to noon and from 12:30 P.M. to 4:30 P.M.; that defendant required all employees of the mechanical division, including plaintiffs, to be dressed in their working clothes prior to punching the time clock and to punch the clock before commencing work each morning; that defendant promulgated a rule requiring employees of the mechanical division to report in the shops to which they were assigned, dressed for work and ready to commence work, at 7:55 A.M.; that this rule was enforced by the supervisory personnel of the mechanical division and that employees were further apprised and reminded of the rule by signs prominently posted in various places, such as the dressing rooms and near the time clocks; that plaintiffs commenced their usual daily activities at 7:55 A.M., at which time they received instructions when necessary from the supervisory personnel, obtained or removed their tools from tool chests and cabinets, and, when their presence was required in other portions of the plant, left their shops carrying their tools or supplies to go where their work was assigned.

A contract beween the certified union and the defendant was in effect which provided for a basic workday of eight hours and a basic workweek for forty hours, and that workers should be paid at one and one-half times their regular rate for all overtime hours. It is admitted that when the defendant computed the compensation due each plaintiff it did not include the period from 7:55 A.M. to 8:00 A.M. as part of the workday. This action was brought to recover overtime compensation for that five minute period for those days which the time cards disclosed plaintiffs punched the time clock at or before 7:55 A.M.

■ Defendant first alleges error because of the failure of the trial court to sustain its motion to dismiss filed on May 27, 1947, and cites numerous cases holding that under the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251–262, in order to state a good cause of action (more properly a claim upon which relief can be granted), plaintiffs must plead either an express provision of a written or nonwritten contract in effect at the time of the alleged activity or a custom or practice in effect at the time of the alleged activity, which made such activity compensable. Defendant's contention in this respect is without merit, because, first, the grounds stated in defendant's motion did not raise any question of pleading before the trial court, and, secondly, by its amended answer the defendant itself raised the question of the applicability of the Portal-to-Portal Act, and plaintiffs made a reply thereto. Upon the issues thus framed, the question was litigated in the district court without the sufficiency of plaintiffs' complaint being challenged. Moreover, it should be noted that plaintiffs' complaint was filed more than six months prior to the passage of the Portal-to-Portal Act.

Defendant next cites the Portal-to-Portal Act of 1947 and legislative history pertaining thereto as an absolute bar to recovery under this action. It raised this defense by its amended answer as well as by timely motions at the trial. Sec. 2 of the Portal-to-Portal Act provides that no employer shall be subject to any liability under the Fair Labor Standards Act on account of failure to pay overtime compensation on account of any activity unless such activity was compensable by either (1) an express

provision of a written or nonwritten contract, or (2) a custom or practice in effect at the time of such activity.

The employment contract with the union which represented all the plaintiffs, which was in effect during the period here in question, provided: "Employees who *are required* to work over 8 hours in any one day * * * will be paid one and one-half times their regular rate for all such overtime hours." (Italics added.) The trial court found that the plaintiffs were required to commence their usual activities five minutes before the time defendant computed the start of their working day for payroll purposes. The court also found that the plaintiffs were required by the rule of the company to be dressed for work and punched-in by 7:55 A.M. Much of the work that they did immediately after punching in, such as receiving instructions, drawing materials, going from the shop to the place of work, and carrying tools, was the same type of activity that they carried on from time to time throughout the day. It must be kept in mind that these plaintiffs were maintenance men, who might remain on one job all day, or who might go from place to place in the plant and participate in half a dozen jobs on any given day.

In Joshua Hendy Corp. v. Mills, 169 F.2d 898, 900, the Court of Appeals for the Ninth Circuit reviewed a somewhat similar situation. At that plant the normal daily work shift was eight and one-half hours, less a half-hour lunch period. It was Engineer Mills' duty to give almost constant attention to the boiler, which customarily prevented his taking time off for the lunch period. Nevertheless he was paid for only eight hours work per day. The labor contract in force provided that overtime compensation would be paid for all "work performed" over forty hours per week. The court held:

"* * * It is paragraph 4 of the contract which renders the Portal-to-Portal Act inoperative. That paragraph, it will be noted, establishes the work week at 40 hours straight time and 8 hours overtime and further provides for the payment of overtime for all 'work performed' in excess of 40 hours per week. Mills performed 11 hours work in excess of 40 hours within the meaning of the phrase 'work performed.' He was paid for 8 hours overtime only."

We are bound by the finding of the district court that the plaintiffs were required to work five minutes in excess of the eight regular hours on each of the days indicated by the time cards in evidence (as compiled in the stipulation). We conclude that the activities of the plaintiffs were covered by an express provision of a written contract, and that the Portal-to-Portal Act of 1947 is not a bar to maintaining this action.

Defendant's principal defense is based on the doctrine of de minimis. Although the trial court overruled this defense, the judge stated in his opinion that the amount of claimed working time involved "comes very close, I think, to coming within the rule of which you talked, your de minimis rule."

Applicability of the rule of de minimis non curat lex in connection with the Fair Labor Standards Act first entered the limelight of prominence by the decision of the Supreme Court in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, at page 692, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515, in which the court said:

"We do not, of course, preclude the application of a de minimis rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. The de minimis rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of walking time in issue."

The court then considered preliminary activities, such as putting on aprons and overalls, removing shirts, taping or greas-

ing arms, putting on finger cots, preparing equipment for productive work, turning on switches for lights and machinery, opening windows, and assembling and sharpening tools, and ruled, 328 U.S. at page 693, 66 S.Ct. at page 1195, 90 L.Ed. 1515:

"* * * Hence they constitute work that must be accorded appropriate compensation under the statute. (Citing cases.) Here again, however, it is appropriate to apply a de minimis doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek."

The case was remanded to Judge Picard for the determination of the amount of walking time involved, as well as the amount of preliminary activities performed, and to give due consideration to the application of the de minimis doctrine to the claims for overtime compensation. After extended hearings Judge Picard determined that even though walking time might amount to 6.2 minutes daily, and preliminary activities to 3 minutes daily—in the case of many plaintiffs a total of 9.2 minutes per day—all this was covered by the de minimis rule, and judgment was entered dismissing the complaint. An appeal was taken from the judgment of dismissal, but was later dismissed upon the merits by stipulation, with prejudice to any renewal thereof (6 Cir., 162 F.2d 200). A petition for a writ of certiorari by the United States as intervenor was dismissed by the Supreme Court. United States v. Mt. Clemens Pottery Co., 331 U.S. 784, 67 S.Ct. 1191, 91 L.Ed. 1815.

The Supreme Court tells us that activities are de minimis which involve only "insubstantial and insignificant" periods of time. Anderson v. Mt. Clemens Pottery Co., supra, 328 U.S. at page 693, 66 S.Ct. at page 1195, 90 L.Ed. 1515. Also, "it is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." Anderson v. Mt. Clemens Pottery Co., supra, 328 U.S. at page 692, 66 S.Ct. at page 1195, 90 L.Ed. 1515. The de minimis rule, the court says, is "justified by the actualities of working conditions * * * the realities of the industrial world," and "by the policy of the Fair Labor Standards Act." It is thus apparent that no rigid rule can be laid down with mathematical certainty as to when the de minimis rule applies. Each situation presented must be examined in the light of what is "substantial" and "reasonable" in view of all the factors present. Here, not more than five minutes a day is involved. The checking in at the time clock, the receiving of instructions from supervisory personnel, the obtaining of tools from tool chests and cabinets, and the walking to the place plaintiffs were required to be are similar to the preliminary activities which were held governed by de minimis in the Mt. Clemens case.

We have concluded that the overtime activities here in question are clearly de minimis under the doctrine of Anderson v. Mt. Clemens Pottery Co., supra, and hence are not compensable.

Illustrative of other cases decided since the opinion in Anderson v. Mt. Clemens Pottery Co., supra, was announced, and the length of time consumed in preliminary activities or walking time, and all of which have been held to be de minimis, are: McIntyre v. Joseph E. Seagram & Sons Co., Inc., D.C., 72 F.Supp. 366 (10-20 minutes); McComb v. C. A. Swanson & Sons, D.C., 77 F.Supp. 716 (10-11 minutes); Lasater v. Hercules Powder Co., D.C., 73 F.Supp. 264 (possibly 10 minutes). To the same effect, see: Timmons v. Wagoner County Coal Co., 13 Labor Cases, Par. 64,006; Tully v. Joshua Hendy Corp., 15 Labor Cases, Par. 64,696.

In view of the result reached, it is not necessary to discuss other points raised on the defendant's appeal nor the cross-appeal of the plaintiffs.

The judgment of the district court will be reversed and the cause remanded with directions to dismiss the complaint.